IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 7, 2006 Session

## CURTIS R. THRAPP v. MARY ELIZABETH THRAPP (SCHOEDEL)

**Direct Appeal from the Circuit Court for Blount County**
**No. E-20416     Hon. W. Dale Young, Circuit Judge**

**No. E2006-00088-COA-R3-CV  - FILED MARCH 8, 2007**

The parties were divorced in Oregon where the Court ordered the custodial arrangement for the only child of the marriage.  The Mother then moved to Colorado, where she filed suit in Colorado in the custody dispute.  She then moved to Tennessee, where the Father sued her over the ongoing dispute. The Colorado Court ultimately declined jurisdiction and the Tennessee Court ordered a change of the custody.  The mother has appealed.  We affirm the change of custody.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Elizabeth K.B. Meadows, and Mandy M. Hancock, Knoxville, Tennessee, for appellant.

Hilary Williams Burgin and Charles A. Carpenter, Maryville, Tennessee, for appellee.

## OPINION

### BACKGROUND

Curtis R. Thrapp (the "Father") and Mary Elizabeth Thrapp (Schoedel) (the "Mother") married in Colorado on May 31, 1998.  They moved to Lane County, Oregon, and on February 21, 2002 William Ashby Thrapp (the "Son") was born. On April 17, 2002, the Mother and the Son moved to Larimer County, Colorado, but she filed for divorce in Oregon.  The Circuit Court of the State of Oregon for Lane County (the "Oregon Court") held a four-day divorce trial in

December 2002.

On January 29, 2003, the Oregon Court issued a Judgement of Dissolution of Marriage divorcing the parties and awarding primary residential parent status to the Mother. The Father's visitation rights under the Oregon Custody and Parenting Plan depended upon the distance separating the parents, the Father's visitation rights being more generous if the Father lived within 80 miles of the Mother.

On April 23, 2003, the Mother filed a Petition for Emergency Ex-Parte Parental Responsibility with the District Court of the State of Colorado for Larimer County (the "Colorado Court") arguing the overnight visitations would be harmful to the Son. That same day the Colorado Court suspended the Father's overnight visitation rights until May 12, 2003. In May 2003, the Mother filed a motion with the Colorado Court requesting that the Court communicate with the Oregon Court and accept jurisdiction over child custody issues, and she also filed a motion in the Oregon Court requesting that the Oregon Court decline jurisdiction. The Father opposed the Mother's request to decline jurisdiction. The Colorado Court refused to initiate communication with the Oregon Court and refused to extend the Ex-Parte Parental Responsibility Order, and the Oregon Court denied the Mother's motion.

The Oregon Court described the Mother's motivation as follows: "the [Mother] is now attempting to transfer jurisdiction to Colorado and to avoid having to modify the Oregon judgment which she finds unsatisfactory." The Court also noted the Mother's, "ongoing history of misrepresentations made to the Court and to the parties involved (erroneous affidavits, fleeing to Colorado under false pretenses, etc)." The Oregon Court concluded that "[c]onsidering the nature and motivation of [the Mother's] relocation to Colorado, she should not be allowed to elude or to be excused from Oregon's jurisdiction simply because she has lived in Colorado with her child for the past year."

The Father moved to Colorado on August 4, 2003, which entitled him to three to four consecutive days of custody each week. The Mother immediately sought another Emergency Ex-Parte Temporary Restraining Order, asking the Colorado Court to reduce the Father's parenting time. The Colorado Court denied the Mother's motion, and reasoned that the Mother's Motion was "not sufficient to confirm that Oregon no longer has jurisdiction." On August 13, the Mother filed a Motion for Modification of Parenting Time with the Colorado Court, and the Colorado Court then concluded it had child custody jurisdiction because both parents lived in Colorado.

In September 2003, the Colorado Court approved and adopted the parents' Stipulation to Temporary Parenting Time, and the parents later agreed to a modification of parenting time in February, 2004. The Colorado Court then adopted the Modification as an order of the court on February 24, 2004. In March of 2004, the Father returned to Oregon. He testified that financial considerations necessitated his return to Oregon. Subsequently, the Colorado Court ordered the Mother not to interfere with the Father's visitation.

On August 27, 2004, the Father traveled to Colorado for his scheduled weekend visit, but the Mother never complied. On the same date, the Mother filed Notice of Change of Address with the Colorado Court and asked the Court not to release her new address to the Father. The Mother, her new husband, and the Son moved to Blount County, Tennessee on August 31, 2004, and on September 3, the Father filed an emergency motion with the Colorado Court, alleging that since the Oregon custody determination the Mother had denied the Father's visitation at least 12 times. The Colorado Court then ordered the Mother to inform the Father of her current address and to bring the Son to Colorado for the Father's September visitation.

On September 17, 2004, the Father filed a Motion to Enforce Parenting Time and a Motion for Modification of Custody/Decision Making Responsibilities. The Motion also alleged the Mother denied the Father his September weekend visitation and had not provided her new address. The Mother then filed two Responses to the Motions, arguing that the Colorado Court no longer had jurisdiction because neither parent resided in Colorado and the child resides in Tennessee. On October 26, 2004, the Colorado Court issued an Order stating that the Court would withhold ruling on the Father's Motions until a magistrate judge decided the jurisdictional question. The Colorado Court concluded, "While [the Father's] allegation that [the Mother] is not in compliance with the parenting time orders may be correct, the court does not believe it can or should rule on the enforcement motion until the jurisdictional matter is decided." The court further stated, "[the Mother] should not construe this ruling as approval of any action she may have taken if she has disregarded the February 24, 2004 parenting time orders which adopted the stipulation of the parties. The Court expects that the existing orders will be followed by her at this time because they remain in full force and effect until modified." On October 29, 2004, the Father filed a Motion requesting parenting time with the Son during the Thanksgiving holiday, which the Colorado Court denied because the child is young and not acclimated to longer periods of parenting time with the Father and travel." The court noted, however, that the Mother's moves have been one of the primary causes of this problem, and until the jurisdictional matters are resolved at the hearing set for December, the Court reasserted that it had continuing jurisdiction of the case.

The Mother responded to the Court's Order and argued that "[t]he State of Colorado no longer has exclusive, continuing jurisdiction because the child and the child's parents no longer reside in Colorado." Her Statement also argued that "[t]he State of Tennessee meets the standards of initial jurisdiction . . . . [T]he [Mother] and child have significant connections to Tennessee. [S]ubstantial evidence is available in Tennessee concerning the child's care, protection, training, and personal relationships." Subsequently, the Father confessed to jurisdiction in the State of Tennessee and indicated to the Colorado Court that he was proceeding in the Tennessee court. Accordingly, on December 27, 2004, the Colorado Court deemed the Father's September 17, 2004 enforcement motion to be abandoned.

THE TRIAL OF THE TENNESSEE CASE

On December 3, 2004, the Father filed a Complaint against the Mother in the Circuit Court for Blount County, Tennessee (the "Circuit Court"). The Complaint averred that Tennessee

has jurisdiction over the case because (1) the Mother and Son currently reside in Tennessee, (2) none of the parties currently reside in Colorado, (3) the Mother filed pleadings in the Colorado Court asserting that Tennessee has jurisdiction, and (4) the Mother is estopped from denying Tennessee's jurisdiction. The Complaint requested an ex parte temporary restraining order restraining the Mother from removing the Son from Blount County, and asked for the entry of a permanent parenting plan, awarding primary residential custody to the Father. On the same day the Circuit Court issued a Temporary Restraining Order restraining the Mother from removing the Son from Blount County and from interfering with or denying the Father's rights to co-parenting time as set out in the applicable orders of the Oregon and Colorado courts.

On February 25, 2005, the Circuit Court found that "the parties are in agreement that they wish this Court to take jurisdiction over . . . the aforementioned Colorado and Oregon cases, and to take jurisdiction over all matters regarding the co-parenting and support of the parties' minor child." The Order stated, "this Court will accept jurisdiction . . . conditioned upon the [Colorado Court] declining jurisdiction." The Circuit Court further ordered that upon transfer of jurisdiction the Parties were to complete a Parent Education Seminar and engage in mediation by an approved Rule 31 Family Mediator in an effort to resolve all issues.

On March 18, 2005, the Father filed a Motion for Court to Decline Jurisdiction with the Colorado Court. The Motion informed the Colorado Court of the Circuit Court's willingness to accept jurisdiction over the case if the Colorado Court would decline jurisdiction. On March 28, the Colorado Court issued an order declining "further jurisdiction."

In July 2005, the Mother moved from Tennessee to Colorado. On July 18, she filed a Notice of Intent to Relocate with the Circuit Court. The Notice informed the Circuit Court that the Mother's new address would be in Lakewood, Colorado. On July 20, the Father filed a Petition with the Circuit Court opposing the removal of the Son from Tennessee, and argued that the Mother violated the December 3 Temporary Restraining Order. On August 1, the Mother filed a Special Appearance with the Circuit Court arguing that Tennessee no longer had jurisdiction over the case.

On August 29, the Circuit Court held a hearing on the Father's Petition, and entered an Order which overruled the Mother's objection to the Court's personal and subject matter jurisdiction and found that the Mother's relocation (1) "was not in accordance with Tennessee law regarding parental relocation as required by Tennessee Code Annotated § 36-6-108," (2) the Mother's motive for relocation was "for the purpose of defeating the [Father's] visitation rights," and (3) the Mother "is in willful contempt of [the court's] prior Order restraining the [Mother] from relocating with the Child outside of Blount County, Tennessee." The Circuit Court also adopted the Father's proposed Permanent Parenting Plan and issued a Writ of Attachment ordering the return of the Son to the Father.

Following the Circuit Court's Order, the Mother filed a Motion for Court to Assume Emergency Temporary Jurisdiction with the District Court of the State of Colorado for Jefferson County. On September 9, that Court issued an order declining to exercise emergency temporary

jurisdiction, and the court reasoned, "solely because [the Mother] is unhappy with the Tennessee Court's Order, she is seeking to have this Court exercise emergency temporary jurisdiction. However, she has failed to allege any true emergency necessitating the protection of this Court. She is clearly forum shopping."

On September 28, the Mother filed a Motion for New Trial, and Relief from the Judgment in the Circuit Court. The Motion argued that "Tennessee has never had jurisdiction to make a child custody determination in this action.", and in response to the Mother's Motion, the Circuit Court concluded that it had subject matter jurisdiction pursuant to T.C.A. § 36-6-218(1), and overruled the Mother's Motion. The Mother then filed a timely Notice of Appeal.

ISSUES ON APPEAL

A.    Whether the Circuit Court had authority to modify the prior custody determinations?

B.    Whether the Circuit Court had authority to issue the December 3, 2004 ex parte Temporary Restraining Order?

C.    Whether the Temporary Restraining Order expired on December 17, 2004?

D.    Whether the Circuit Court erred in awarding custody the Father?

We review appeals of this nature *de novo*, but with a presumption of correctness of the trial court's findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). This presumption of correctness, however, does not apply to the trial court's conclusions of law. *Keaton v. Hancock County Bd. Of Educ.,* 119 S.W.3d 218, 222 (Tenn. Ct. App. 2003).

The Mother argues the Circuit Court did not have subject matter jurisdiction to modify the prior custody determinations which had been made in Oregon and Colorado.

Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996).

> Thus, when a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case. The court must then determine whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate cases of that sort. Both determinations present questions of law which this court reviews de novo without a presumption of correctness.

-5-

*Staats v. McKinnon*, 206 S.W.3d 541 at 542 (citations omitted) (Tenn. Ct. App. 2006).

The Circuit Court acted on the Father's Petition and modified the prior custody determinations of the Oregon and Colorado Courts. Tennessee's version of the Uniform Child Custody Jurisdiction Enforcement Act (the "UCCJEA")[1] and the Federal Parental Kidnaping Prevention Act (the "PKPA")[2] govern subject matter jurisdiction in cases involving interstate child "custody determinations."

Both Acts establish six separate bases for jurisdiction: (1) "home state" jurisdiction,[3] (2) "significant connection/substantial evidence" jurisdiction,[4] (3) "emergency" jurisdiction,[5] (4) "more appropriate forum" jurisdiction,[6] (5) "vacuum" jurisdiction,[7] and (6) "exclusive, continuing" jurisdiction.[8] To avoid situations where more than one state satisfies one of these jurisdictional bases, the Acts create a jurisdictional hierarchy that minimizes the simultaneous exercise of jurisdiction. 28 U.S.C. § 1738A(c)(2)(A)–(B), (D); T.C.A. § 36-6-216(a). Only the state with the superior jurisdictional basis will be entitled to exercise jurisdiction, unless that state declines to exercise jurisdiction. 28 U.S.C. § 1738A(c)(2)(A)–(B), (D); T.C.A. §§ 36-6-216(a), -222. The jurisdictional hierarchy descends as follows: (1) "exclusive, continuing" jurisdiction, (2) "home state" jurisdiction, (3) "significant connection/substantial evidence" jurisdiction, (4) "more

---

[1] T.C.A. §§ 36-6-201 to -243 (2005). The UCCJEA became effective in Tennessee on June 14, 1999. 1999 Tenn. Pub. Acts, ch. 389, §§ 1–46.

[2] 28 U.S.C. § 1738A. Congress enacted the PKPA in 1980 pursuant to the Full Faith and Credit Clause and other constitutional provisions. *Staats*, 206 S.W.3d at 545. "[A]s federal law the PKPA is pre-emptive, and it controls in any case in which there is a conflict between federal and state law." *Brown v. Brown*, 847 S.W.2d 496, 499 (Tenn. 1993); *see also* U.S. Const. art. VI, § 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

[3] 28 U.S.C. § 1738A(c)(2)(A); T.C.A. § 36-6-216(a)(1).

[4] 28 U.S.C. § 1738A(c)(2)(B); T.C.A. § 36-6-216(a)(2).

[5] 28 U.S.C. § 1738A(c)(2)(C); T.C.A. § 36-6-219.

[6] 28 U.S.C. § 1738A(c)(2)(D); T.C.A. § 36-6-216(a)(3).

[7] 28 U.S.C. § 1738A(c)(2)(D); T.C.A. § 36-6-216(a)(4).

[8] 28 U.S.C. § 1738A(c)(2)(E), (d); T.C.A. § 36-6-217.

appropriate forum" jurisdiction, and (5) "vacuum" jurisdiction.[9] "Emergency" jurisdiction exists outside of the jurisdictional hierarchy as an alternative or exception to the hierarchy. 28 U.S.C. § 1738A(c)(2)(C); T.C.A. § 36-6-216 to -219.

Because this case involves the modification of foreign child custody determinations, the gateway to the above framework in this case is T.C.A. § 36-6-218:

> Except as otherwise provided in § 36-6-219, a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under § 36-6-216(a)(1) or (2), and:
>
> > (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221; or
> >
> > (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

The primary function of this section is to ensure either (1) that no state has a jurisdictional basis superior to Tennessee's jurisdictional basis or (2) that any state with a superior jurisdictional basis has declined to exercise jurisdiction. When applying this section, the critical date is December 3, 2004, when the Father filed his Complaint with the Circuit Court. T.C.A. § 36-6-217 cmt. ("Jurisdiction attaches at the commencement of a proceeding."); T.C.A. § 36-6-205(5) ("'Commencement' means the filing of the first pleading in a proceeding."); *Staats v. McKinnon*, 206 S.W.3d 532, 548–49 (Tenn. Ct. App. 2006).

The threshold question is whether Tennessee had jurisdiction to make an initial

_____

[9]28 U.S.C. § 1738A(c)(2), (d), (f); T.C.A. §§ 36-6-216(a), -217, -218. The relevance of particular bases on the jurisdictional hierarchy depends upon whether any court has already made a custody determination concerning the child at issue. For example, when a court is asked to make an initial custody determination, "exclusive, continuing" jurisdiction is irrelevant because only a court which has already made a child custody determination has such jurisdiction. 28 U.S.C. § 1738A(d); T.C.A. §§ 36-6-217, -218. In addition, when a court is asked to modify a foreign custody determination, the relevance of "more appropriate forum" jurisdiction and "vacuum" jurisdiction is diminished because the UCCJEA requires at least "significant connection/substantial evidence" jurisdiction before a Tennessee court may modify such a determination. T.C.A. §§ 36-6-218 (stating that before a Tennessee court may modify the custody determination of another state, the Tennessee court must have jurisdiction under § 36-6-216(a)(1) (i.e., "home state" jurisdiction) or § 36-6-216(a)(2) (i.e., "significant connection/substantial evidence" jurisdiction)).

determination under § 36-6-216(a)(1) or (2).[10]  Section 36-6-216(a)(1) provides for "home state" jurisdiction, i.e., "This state is the home state[11] of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state . . . ." T.C.A. § 36-6-216(a)(1).

As of December 3, 2004, the Son and Mother had lived in Tennessee for approximately three consecutive months.[12]  Accordingly, Tennessee did not have "home state" jurisdiction.

The issue thus becomes whether Tennessee had "significant connection/substantial evidence" jurisdiction pursuant to § 36-6-216(a)(2), on the ground that this State is a more appropriate forum under §§ 36-6-221 or 36-6-222, and:

> (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence;  and
>
> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships . . . .

T.C.A. § 36-6-216(a)(2); *accord* Colo Rev. Stat. § 14-13-201 (using essentially identical language); Colo Rev. Stat. § 14-13-102(7) (providing a definition of "home state" identical to that in T.C.A. § 36-6-205(7)).

---

[10]Both Parties agree that Tennessee did not have "emergency" jurisdiction pursuant to § 36-6-219.  The Father's Complaint did not allege abandonment, mistreatment, or abuse of the Son by the Mother; therefore, "emergency" jurisdiction was not implicated.  T.C.A. § 36-6-219(a) (requiring abandonment, mistreatment, or abuse).

[11]"Home state" is defined as,

> the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding.  In the case of a child less than six (6) months of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period . . . .

T.C.A. § 36-6-205(7).  The Son was born on February 21, 2002.  Thus, on December 3, 2004 the Son was well over six months of age.

[12]The Son and Mother first moved to Tennessee on August 31, 2004.

Under this section, Tennessee would not have "significant connection/substantial evidence" jurisdiction if another state had "home state" jurisdiction, unless such state declined to exercise jurisdiction. The Parties do not dispute that Oregon no longer had any jurisdiction over this case;[13] but the Mother and Son lived in Colorado from April 17, 2002 until August 31, 2004. During the six months immediately before commencement of the proceeding, the Son and Mother lived in Colorado for approximately three consecutive months. On this basis, Colorado was not the Son's "home state" on December 3, 2004 as that phrase is defined in the Tennessee and Colorado statutes. Despite lacking "home state" status, Colorado could have had "home state" jurisdiction if (1) Colorado was the Son's home state at any time within six months before commencement of the proceeding, (2) the son was absent from Colorado; and (3) a parent continued to live in Colorado. T.C.A. § 36-6-216(a)(2); *accord* Colo Rev. Stat. § 14-13-201. The third element, however, was not satisfied on December 3, 2004. At that time the Mother lived in Tennessee and the Father lived in Oregon. Accordingly, Colorado did not have "home state" jurisdiction under either Tennessee or Colorado law.

Because no other state had "home state" jurisdiction, Tennessee could have had "significant connection/substantial evidence" jurisdiction if,

> (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships . . . .

T.C.A. § 36-6-216(a)(2). The Mother argues that the facts did not fall within the ambit of the quoted statute. This argument, however, is inconsistent with her prior pleadings.

After the Mother and Son moved to Tennessee, the Mother filed a Position Statement with the Colorado Court arguing that "[T]he [Mother] and child have significant connections to Tennessee, and [S]ubstantial evidence is available in Tennessee concerning the child's care, protection, training, and personal relationships." Subsequently, the Father confessed to jurisdiction in the State of Tennessee and advised the Colorado Court that he was proceeding in Tennessee. On

---

[13]Oregon lost "exclusive, continuing" jurisdiction on August 4, 2003 when the Father moved from Oregon to Colorado. Or. Rev. Stat. § 901.744(1); *accord* T.C.A. § 36-6-217(a). Oregon did not have "home state" jurisdiction because the Son had not lived in Oregon since April 17, 2002. Or. Rev. Stat. § 901.741(1)(a); *accord* T.C.A. § 36-6-216(a)(1). Oregon also did not have "significant connection/substantial evidence" jurisdiction on December 3, 2004 because the Son no longer had a significant connection to Oregon. The Son had lived in Oregon for only six weeks and subsequently lived in Colorado for approximately two years and four months and in Tennessee for three months. Or. Rev. Stat. § 901.741(1)(b); *accord* T.C.A. § 36-6-216(a)(2).

December 27, 2004, the Colorado Court deemed the Father's September 17, 2004 motion to be abandoned.

These facts satisfy the elements of judicial estoppel. "Under the doctrine of judicial estoppel 'a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action.'" *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999). The purpose of judicial estoppel is to prevent a party from "gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits." *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn. 1995). Judicial estoppel precludes the Mother from denying the truth of her prior factual position.[14] *Marcus*, 993 S.W.2d at 602.

Based on the foregoing, on December 3, 2004 the Son and Mother had a significant connection to Tennessee and substantial evidence was available in Tennessee concerning the child's care, protection, training, and personal relationships. We hold Tennessee had "significant connection/substantial evidence" jurisdiction as of December 3, 2004.

Under both Tennessee and Colorado law, a state loses "exclusive, continuing" jurisdiction if "the child, the child's parents, and any person acting as a parent do not presently reside[15] in the other state." T.C.A. § 36-6-218(2); *accord* Colo Rev. Stat. § 14-13-202(1)(b). Since, on December 3, 2004, the Son and Mother resided in Tennessee and the Father resided in Oregon, the Colorado Court did not have "exclusive, continuing" jurisdiction, and the Tennessee Court had subject matter jurisdiction to modify a child custody determination pursuant to both T.C.A. § 36-6-218 and the PKPA.[16]

But the Mother further argues that T.C.A. § 36-6-221(a) and 28 U.S.C. § 1738A(g) prohibited the Circuit Court from exercising modification jurisdiction over the case because a

---

[14]Judicial estoppel precludes the Mother only from denying the truth of her prior factual argument. Application of judicial estoppel cannot preclude the Mother from challenging Tennessee's subject matter jurisdiction. *See Love v. Cave*, 622 S.W.2d 52, 56 (Tenn. Ct. App. 1981) ("[S]ubject matter jurisdiction may not be conferred by estoppel, but a party may be estopped to change an assertion of fact which conferred jurisdiction in the first instance.").

[15]"Determining where an individual 'presently reside[s]' does not involve a technical inquiry into the individual's legal domicile under state law. Rather, the sole question is whether the relevant individuals 'continue to actually live within the state' or have 'physically le[ft] the state to live elsewhere.'" *Staats*, 206 S.W.3d at 549 (quoting T.C.A. § 36-6-217 cmt.).

[16]The same facts that satisfied the elements for modification jurisdiction under the UCCJEA also satisfied the elements for modification jurisdiction under the PKPA. The PKPA's elements for modification jurisdiction are substantially similar to their counterparts in Tennessee's UCCJEA. *Compare* 28 U.S.C. § 1738A(f), (d) *with* T.C.A. § 36-6-218.

proceeding was still pending in the Colorado Court. These sections contain the "first in time" rule.[17] This rule prevents simultaneous proceedings in the rare event that more than one state is equally entitled to exercise jurisdiction. Tennessee and Colorado had "significant connection/substantial evidence" jurisdiction simultaneously.[18] In addition, the Father's Complaint indicated that a child custody proceeding was still pending in Colorado as of December 3, 2004. The foregoing circumstances implicate the "first in time" rule.

Our Supreme Court recently addressed application of Tennessee's "first in time" rule to modification proceedings in *Button v. Waite*, 208 S.W.3d 366 (Tenn. 2006), and ruled in reversing the Court of Appeals that Tenn. Code Ann. § 36-6-221(a) and (b) apply to initial custody determinations, and subsection (c) governs modification proceedings. Under this construction, Tennessee's "first in time" rule applies to initial custody determinations, not modification proceedings.

---

[17]The PKPA's "first in time" rule provides,

> A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

28 U.S.C. § 1738A(g). Tennessee's UCCJEA "first in time" rule provides,

> Except as otherwise provided in § 36-6-219, a court of this state may not exercise its jurisdiction under this part if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under § 36-6-222.

T.C.A. § 36-6-221(a).

[18]Before moving to Tennessee, the Son and Mother continuously lived in Colorado for approximately two years and four months. The Son spent the majority of his life in Colorado, and his grandparents and pediatrician lived in Colorado. In addition, the Mother is originally from Colorado and her parents live there. Although Colorado did not have "exclusive, continuing" jurisdiction or "home state" jurisdiction, it still had "significant connection/substantial evidence" jurisdiction. Colo Rev. Stat. §§ 14-13-202(2), -201(1)(b); *accord* 28 U.S.C. § 1738A(c)(2)(A)–(B), (d); T.C.A. §§ 36-6-217(b), -216(a)(2). The fact that the Son was not present in Colorado on December 3, 2004 is irrelevant. Colo Rev. Stat. § 14-13-201(3) ("Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination."); *accord* T.C.A. § 36-6-216(c).

-11-

While Tennessee's "first in time" rule does not apply, the PKPA's "first in time" rule must be considered, as Tennessee courts must exercise jurisdiction consistently with both its own law and the PKPA. *See Brown v. Brown*, 847 S.W.2d 496, 499 (Tenn. 1993) ("[A]s federal law the PKPA is pre-emptive, and it controls in any case in which there is a conflict between federal and state law."). The PKPA's "first in time" rule applies to "any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." 28 U.S.C. § 1738A(g). Under the PKPA, the definitions of both "custody determination" and "visitation determination" include modifications. 28 U.S.C. § 1738A(b)(3), (9). Once the Colorado Court declined jurisdiction, its was no longer "exercising jurisdiction" and the Circuit Court was free to exercise its jurisdiction to modify the Colorado child custody determination pursuant to both Tennessee's UCCJEA and the Federal PKPA.

On August 29, approximately five months after the Colorado Court declined jurisdiction, the Circuit Court modified the child custody determinations by adopting the Father's proposed Permanent Parenting Plan. While the Son and Mother left Tennessee in July, this fact did not deprive the Tennessee's Court of subject matter jurisdiction because the physical presence of a party or child is not necessary to make a child custody determination. T.C.A. § 36-6-216(c).

Next, the Mother attacks the Trial Court's authority to issue the December 3, 2004 ex parte Temporary Restraining Order. We hold, without elaboration, that the Trial Court had authority to issue the ex parte Temporary Restraining Order, but the Temporary Restraining Order expired on December 17, 2004.

The Circuit Court's local rule governing ex parte injunctive relief in domestic relations cases states that:

> Upon the issuance of any such ex parte injunctive relief set out above, the court shall set a hearing not later than fifteen (15) days from the date of issuance of extraordinary process, and notice of said hearing shall be served upon the adverse party together with the restraining order or temporary injunction, and the ex parte injunctive relief granted shall expire as of the date of said hearing unless extended by the court at said hearing.

Tenn. R. 5th Dist. Civ. Prac. 11.2 (2005). The Circuit Court held a hearing regarding the TRO on December 17, 2004, and entered the order resulting from that hearing on February 25, 2005. The order mentions neither an extension of the TRO nor a waiver of the local rule. Despite the February order's silence as to the TRO, the Circuit Court's August order found that the Mother violated the TRO.

The Father argues the Circuit Court's August order waived the local rule; therefore, the TRO did not expire. Although the August order did not expressly state that it waived the local

rule, waiver may be inferred from the court's actions. *Crumbley v. Crumbley*, No. M1998-00158-COA-R3-CV, 1999 WL 1015565, at *2 (Tenn. Ct. App. Nov. 10, 1999).

> The Trial Court has authority to make its own rules and accordingly may waive or abolish them if it chooses. This Court will not reverse a Trial Judge for waiving a local rule absent the clearest showing of an abuse of discretion and that such waiver was the clear cause of a miscarriage of justice.

*Killinger v. Perry*, 620 S.W.2d 525, 525 (Tenn. Ct. App. 1981).

Based upon the local rule, the TRO, and the Court's February order, the Mother was justified in believing the TRO expired on December 17, 2004. The Circuit Court did not waive the local rule until August 31, 2005, approximately eight months after the TRO's expiration date and a month after the Mother had left Tennessee. Accordingly, the waiver of the local rule was an abuse of discretion, and the Order holding the Mother in contempt is of no force and effect.

The final issue is whether the Circuit erred in awarding custody to the Father.

The Circuit Court held a hearing on August 29, 2005, which included all issues raised by the Father's Complaint and his Petition.[19] The modification of an order of custody is governed by T.C.A. §§ 36-6-101(a)(2)(B), -106(a) and by the Supreme Court's decision in *Kendrick v. Shoemake*, 90 S.W.3d 566 (Tenn. 2002). Child relocation is governed by the Parental Relocation Statute, T.C.A. § 36-6-108. Either procedure could result in a change of custody.

Following the August hearing, the Circuit Court entered an order awarding custody to the Father, but failed to specify whether it reached this conclusion using the *Kendrick* procedure or the Parental Relocation Statute. The Mother argues the Circuit Court's adoption of the Father's Permanent Parenting Plan was improper because the Court did not follow the procedures outlined in the Parental Relocation Statute. The Circuit Court found that the Mother's motive for relocating with the Son "was for the purpose of defeating the [Father's] visitation rights" and then found that adoption of the Father's Proposed Permanent Parenting Plan was "in the best interest of the parties' minor child." The Order implies that the first finding led to the second, but neither the Circuit Court's order nor its statements from the bench provide any meaningful guidance regarding how the Court actually reached its custody determination.

We have repeatedly and strongly encouraged trial courts to be as detailed as possible

---

[19]At the August 29 hearing, the Circuit Court asked the Father's counsel whether they would only address the TRO. The Father's counsel answered that they would also address the Father's requested change of custody and opposition to the Mother's relocation. When the Father's Petition is viewed in conjunction with the Father's Complaint and these statements made by the Father's counsel, the Father's primary goal at the hearing becomes clear—to modify the prior orders and obtain custody as the primary residential parent.

-13-

when making findings affecting child custody determinations.[20] Under the existing circumstances, we must simply review the record to determine where the preponderance of the evidence lies. *Kendrick*, 90 S.W.3d at 570; *Villaneuva v. Allen*, No. E2003-01252-COA-R3-CV, 2004 WL 1656387, at *2 (Tenn. Ct. App. July 23, 2004). Accordingly, we are required to review the findings of the trial court *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise." *Kendrick*, 90 S.W.3d at 570; *accord* Tenn. R. App. P. 13(d). In modification proceedings, the Court must engage in a two step analysis. First, the court must determine "whether a material change in circumstances has occurred after the initial custody determination." *Kendrick*, 90 S.W.3d at 570; *see also* T.C.A. § 36-6-101(a)(2)(B). Second, if the court determines that a material change of circumstances has occurred, the court must determine whether modification is in the child's best interest in accordance with the factors listed in T.C.A. § 36-6-106(a). *Kendrick*, 90 S.W.3d at 570.

The Father argues that the Mother's interference with his visitation rights constituted a material change in circumstances. Since the Oregon Court initially awarded her custody, the Mother has displayed a consistent history of interfering with the Father's visitation rights. In April of 2003, the Mother used a misrepresentation[21] to convince the Colorado Court to temporarily suspend the Father's overnight visitation rights. The Mother's behavior caused the Oregon Court to note that the Mother had an "ongoing history of misrepresentations made to the court and to the parties involved." The Mother's interference with the Father's visitation rights was so consistent that the Colorado Court concluded, "[i]t does not appear that [the Mother] has generally been supportive of [the Father's] parenting time despite her assertions to the contrary."

In addition, the Mother's move from Colorado to Tennessee was apparently motivated by a desire to disrupt the Father's visitation rights. Once the Mother arrived in Tennessee, she used her residence to challenge Colorado's jurisdiction, further disrupting the Father's ability to enforce his visitation rights through the courts. Although the Mother testified that she moved to Tennessee because her new husband was going to attend law school at the University of Tennessee, she admitted that her husband had never applied.

---

[20]*Minton v. Fox*, No. E2005-02740-COA-R3-CV, 2006 WL 3017885, at *6 (Tenn. Ct. App. Oct. 24, 2006) ("we 'strongly encourage' trial courts to be as detailed as possible when making findings regarding child custody"); *Landowski v. Landowski*, No. W2002-01689-COA-R3-CV, 2003 WL 21499803, at *3 (Tenn. Ct. App. June 25, 2003) ("It is always helpful to this Court when the trial courts make specific findings of fact."); *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 n.4 (Tenn. Ct. App. July 23, 2003) ("Of course, in [child custody] cases such as this we strongly encourage trial courts to be as detailed as possible.").

[21]The Mother's affidavit alleged that Dr. Debra Govan, a psychotherapist, "strongly opposed" overnight visits between the Father and Son. Dr. Govan's affidavit stated that she made no such statement and that the Mother's misrepresentation was a "red flag" indicating "possible efforts at alienation of the other parent."

In addition, the Mother continued to interfere with the Father's visitation rights after he filed his Complaint with the Circuit Court in December 2004. The Father testified that between December 2004 and August 2005 the Mother denied his visitation requests on several occasions. During this period the Mother allowed the Father to have only one overnight visitation.

This behavior occurred after the Oregon Court's initial custody determination, and the record contains no suggestion that the Mother's behavior could have been anticipated when the Oregon custody order was entered. Moreover, such disruption of the father-child relationship can affect the child's well-being in a meaningful way. The Mother's consistent interference with the Father's visitation rights constituted a material change of circumstances.

The remaining issue is whether modification of custody was in the child's best interest in accordance with the factors listed at T.C.A. § 36-6-106(a)(1)–(10). Although the Mother had been the primary residential parent since January 29, 2003, the evidence establishes that the Son had strong emotional ties to both parents and that the Son was quite comfortable with the Father and his family. The Mother's position as the Son's primary care-giver strengthened her case for continued custody, but she retained this position largely due to her interference with the Father's visitation rights. In 2003, the Father moved to Colorado with the hope of exercising his right to equal custody of the Son, but the Mother's efforts thwarted this. Despite the Mother's position as primary care-giver, the Father displayed a strong desire and ability to provide for his son's needs.[22] *See* T.C.A. § 36-6-106(a)(2).

Since the Son's birth, the Mother has moved the Son from Oregon to Colorado, from Colorado to Tennessee, and from Tennessee back to Colorado. During the same time frame, the Father's residence in Oregon was interrupted only by seven months spent in Colorado so that he could be closer to his son. The Father has displayed a superior ability to provide the Son's life with stability and continuity. *See* T.C.A. § 36-6-106(a)(3).

The Mother admitted that in 1994 she assaulted a woman while under the influence of "psychedelic mushrooms." This circumstance combined with her conduct during the Oregon, Colorado, and Tennessee proceedings calls into question her emotional stability. *See* T.C.A. § 36-6-106(a)(5). The Mother's new husband admitted to vandalizing an Islamic Center in 1998 and received a deferred sentence. This implicates the step-father's character and his ability to act as in the role of a step-father. *See* T.C.A. § 36-6-106(a)(9).

Finally, the Mother has displayed minimal willingness to facilitate and encourage a close and continuing parent-child relationship between the child and the Father. In contrast, the Father's Proposed Parenting Plan and his actions during the history of this case indicate his greater

---

[22]The Father works at US Bank and earns $50,000 per year plus bonuses. The Father has the support of his parents and extended family.

willingness to facilitate such a relationship between the child and the Mother.[23] Based on the foregoing, the evidence does not preponderate against the Circuit Court's finding that changing custody from the Mother to the Father was in the child's best interests.

We reverse the Trial Court's holding the Mother in contempt of the TRO, but affirm the Trial Court's award of custody to the Father.

The cost of the appeal is assessed to Mary Elizabeth Thrapp (Schoedel).

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[23]Although the Father's Proposed Parenting Plan would make him the primary residential parent, he determined the co-parenting time "thinking that if I was not the primary custody parent, how would I like to see a plan written out." The Father testified, "[M]y intention, when asking for primary custody, is not at all to take the child away from his mother.  Its [sic] merely so I can participate in the child's upbringing and build a meaningful relationship with by son."